IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL SAVARESE,

    Plaintiff,

vs.

CAMELBACK SKI CORP.,

    Defendant.

CIVIL ACTION NO.  3:CV-04-1739

(JUDGE CAPUTO)

## MEMORANDUM

Before me is Defendant Camelback Ski Corporation's motion for summary judgment. (Doc. 13.) Plaintiff, Michael Savarese, was skiing at Camelback Ski Area on January 21, 2003 when he was struck by the chair lift when he attempted to get out of the way of the chairs. This occurred because as he lined himself up to board the ski lift chair, the bottom of the chair was not folded down for seating. He therefore sought to get out of the way of that chair, and in so doing, was struck by it, causing a shoulder injury.

Because use of the chair lift is part of downhill skiing, and because the release Plaintiff signed and the exculpating agreement included in the lift ticket are valid, summary judgment will be entered in favor of the Defendant, Camelback Ski Corporation.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c).  A fact is material if proof of its existence or non-

existence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The court need not accept mere conclusory allegations or denials taken from the

pleadings.  *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

The issue in this case is whether Camelback is relieved of liability by virtue of the Skier's Responsibility Act, 42 Pa.C.S.A. § 7102(c), the signed release and the exculpatory language on the lift ticket.  Plaintiff argues that what occurred was not part of the activity of downhill skiing, and is therefore not covered by the Act, the release, or the exculpatory language on the lift ticket.

While the parties have not mentioned the Skier Responsibility Act, 42 Pa.C.S.A. § 7102(c), I note it because the Pennsylvania Supreme Court referred to how a court should read risks inherent in "the sport of downhill skiing."  *See Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339, 1344 (Pa. 2000).  There, the court said:

> Obviously the sport of downhill skiing encompasses more than merely skiing down a hill.  It includes other activities directly and necessarily incident to the act of downhill skiing.  Such activities include boarding the ski lift, riding the ski lift up the mountain, alighting from the lift, skiing from the lift to the trail . . .

*Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339, 1344 (Pa. 2000).

In *Hughes*, the plaintiff, who was struck by another skier at the bottom of the run as she was making her way to the lift, argued she was not downhill skiing at that time.  The court, in quoting the above, was noting that plaintiff's view would require interpreting

3

the sport of downhill skiing in "an extremely narrow, hypertechnical and unrealistic manner." *Id.*

This interpretation carries over to the rental agreement and the exculpatory language on the lift ticket. Moreover, each of those note the inherent risks in skiing include "use of the lifts."

Plaintiff rented ski equipment on January 21, 2003. The rental agreement provided:

> Rental Agreement And Release Of Liability PLEASE READ
>
> * * *
>
> I understand that there are inherent and other risks of injury in the sport of skiing and/or snowboarding/snowblading, including the use of lifts, for which this equipment will be used. . . . I further understand that these risks include the risk of personal injury, that skiing, snowboarding and/or snowblading is a **DANGEROUS** risk sport, and injuries can be serious and even fatal. **I HEREBY ACKNOWLEDGE, ACCEPT, AND ASSUME ALL RISKS OF INJURY TO ANY PARTS OF THIS USER'S BODY THAT CAN AND DO EXIST IN THE SPORT OF SKIING, SNOWBOARDING AND/OR SNOWBLADING. I AGREE THAT I WILL NOT SUE CAMELBACK OR ITS AGENTS OR EMPLOYEES (EITHER ON MY OWN BEHALF OR ON BEHALF OF MY SPOUSE, CHILD OR WARD) FOR INJURIES OR DAMAGES RELATING TO SKIING, SNOWBOARDING AND/OR SNOWBLADING AND/OR THE USE OF THIS EQUIPMENT, EVEN IF I CONTEND THAT CAMELBACK WAS NEGLIGENT.**
>
> * * *
>
> I have carefully read this **AGREEMENT and RELEASE OF LIABILITY** and fully understand its contents. I am aware this is a **RELEASE OF LIABILITY** and a **CONTRACT** between myself and Camelback and I sign it of my own free will.

Plaintiff also purchased a lift ticket which provided in pertinent part:

> **PLEASE READ! Acceptance of this ticket constitutes a contract.  The conditions of this contract are set forth below and will prevent or restrict your ability to sue Camelback**.  Alpine, Nordic and snowboard skiing, including the use of lifts, is a dangerous sport with inherent and other risks. . . . **In consideration of using Camelback's ski facilities, the purchaser or user of this ticket agrees to accept the risks of skiing and agrees not to sue Camelback or its employees if hurt while using the ski facilities regardless of any negligence of Camelback or its employees or agents.**

The back of the lift ticket contains the following language:

> IF YOU ARE NOT WILLING TO ASSUME THE RESPONSIBILITIES DESCRIBED IN OUR BROCHURE AND POSTED AT OUR SKI AREA, THEN DO NOT SKI HERE.
>
> Before affixing this ticket or allowing this ticket to be affixed to your clothing, please read and understand your responsibility as a skier, and understand that skiing is an inherently dangerous sport that can result in a catastrophic injury, death or property damage.

Plaintiff argues that the rental agreement and the lift ticket focus on risks associated with actual skiing and the conditions and obstacles one might encounter by doing so.  There is no mention of the risk of not having a seat on the chair lift.  I liken this language to the Pennsylvania Supreme Court's interpretation of the sport of skiing in *Hughes* as one which involves the use of the chair lift.  To suggest that the chair with the seat not in place is not an inherent risk is simply too narrow a reading of the language of the release and the ticket.

I turn to whether the release and/or the exculpatory language on the lift ticket are effective.

5

Under Pennsylvania law, the validating of an exculpatory clause is governed by the following: (1) The release or contract must not contain any policy of the law; (2) it must be an agreement between individuals relating to their private affairs; and, (3) each party to the agreement must be a free bargaining agent, not one drawn into an adhesion contract with no recourse but to reject the entire transaction. *Zimmer v. Mitchell and Ness*, 385 A.2d 437, 439 (Pa. Super. 1978). In *Zimmer*, a release by a skier who was injured when bindings failed to release was upheld when the release was from "any liability for damage and injury to myself . . . resulting from the use of this equipment, accepting myself the full responsibility for any and all such damages and injury." *Id*. at 438. Pennsylvania law further requires that enforceability depends on strict construction against the party seeking the benefit, and it must spell out the parties' intentions with the "greatest particularity." *Id*. at 439. *Princeton Sportswear Corp. v. H & M Associates*, 507 A.2d 339 (Pa. 1986). *See also Kotovsky v. Ski Liberty Operating Corp.*, 603 A.2d 663 (Pa. Super. 1992). Moreover, the court, when considering an exculpatory clause, must take a common sense look at the agreement as a whole. *Zimmer* at 439.

Applying these principles to the case at hand, I conclude that the criteria set forth in *Zimmer* as well as the rule of strict construction and utmost particularity are satisfied. Here the release states that Plaintiff understands that "there are inherent and other risks of injury in the sport of skiing . . . including the use of lifts. . . " The release itself includes the use of lifts in the "sport of skiing." Moreover, the *Hughes* case would do so even absent the language of the release. Plaintiff argues that the release deals with the act of skiing, viz coming down the hill, and seeks a release of liability due to conditions and

6

obstacles. Plaintiff contends that even if one includes the use of lifts, it does not cover the chair with the seat out of position. I find Plaintiff's proffered construction too restrictive. The release states Plaintiff will not sue for injury or damage "relating" to skiing. The use of the lift is not only mentioned as included in the sport of skiing, its use is certainly related to skiing. Plaintiff argues that to allow the release to exonerate Defendant here would give Defendant license to use generally defective lifts, viz one without seats, and further, would foster a policy of failing to inspect the chair lifts. The release here seeks exoneration from negligence, not intentional misconduct or gross negligence. The alternative factual scenario offered by Plaintiff as a reason to construe the release against the Defendant is tantamount to conduct which would be best characterized as intentional misconduct or gross negligence.

While I am not prepared to hold that the notice at the window where the lift ticket was purchased constitutes a release of the Defendant, it does provide Plaintiff with repetitive notice of the fact that skiing, "including the use of the lifts, is a dangerous sport", and it repeats the condition that the purchase of a lift ticket releases Defendant, even if negligent, and warns not to purchase a lift ticket unless the purchaser agrees to the release and to be bound by the language on the lift ticket.

Lift tickets with exculpatory language have been held to satisfy *Zimmer*. *See Nisbett v. Camelback Ski Corp.*, No. 2226 Civil 1992 (Monroe Co. 1996); *Venn v. Shawnee Mtn. Ski Area*, No. 5109 Civil 2002 (Monroe Co. 2004). In this case, the lift ticket purchased under these circumstances, viz the clear language next to the window and the clear language on the lift ticket, places the lift ticket on the level of being a valid exculpatory agreement as well.

7

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted.

An appropriate Order follows.


Date:  June 27, 2005                    /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL SAVARESE, :
: CIVIL ACTION NO.  3:CV-04-1739
    Plaintiff, :
:
vs. :
: (JUDGE CAPUTO)
CAMELBACK SKI CORP., :
:
    Defendant. :

## ORDER

NOW, this _27th day of June, 2005, IT IS HEREBY ORDERED as follows:

1. Defendant's Motion for Summary Judgment (Doc. 12) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment in favor of Defendant, Camelback Ski Corp., and against, Plaintiff, Michael Savarese.

3. The Clerk of Court is directed to mark this case closed.

                                 /s/ A. Richard Caputo
                                 A. Richard Caputo
                                 United States District Judge